**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ALEXANDER ROSA,<br>*Plaintiff*,<br><br>v.<br><br>JOHN DOE *et al.*,<br>*Defendants*. | No. 3:21-cv-481 (JAM) |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Alexander Rosa is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a *pro se* complaint under 42 U.S.C. § 1983 against DOC officials for violations of his rights under the U.S. Constitution.

As set forth below, I will allow one of his claims to proceed against a doctor who is alleged to have denied pain medication to Rosa while he had a broken collarbone and two gunshot wounds. I will otherwise dismiss Rosa's claims against all other defendants for failure to state plausible grounds for relief.

**BACKGROUND**

Rosa's claims arise from his confinement in 2019 at Bridgeport Correctional Center ("BCC").[1] He was released in 2023.[2]

Rosa names twenty defendants, including Department of Correction Commissioner Rollin Cook, Warden John Doe, Deputy Warden John Doe, Lieutenant John Doe, Dr. Tung, Dr. Viki S. Blumberg, and Nurses Haralamb Karamavros and Andrea E. Chamberlain Swaby.[3] The

[1] Doc. #72 at 2 (¶ 2), 27.
[2] Doc. #54 at 1 (¶ 1). Rosa has since been reincarcerated at a different facility. Doc. #93.
[3] Doc. #72 at 1, 7–8 (¶¶ 13, 17).

following facts are alleged in Rosa's amended complaint and the documents attached to it, and they are accepted as true of purposes of initial review only.[4]

On January 15, 2019, Rosa was taken into DOC's custody as a pretrial detainee at BCC.[5] During his intake, Rosa spoke with Nurse Karamavros about his preexisting conditions, which included a broken collarbone, a gunshot wound in his shoulder, and a gunshot wound in his knee.[6] He "reported pain and needing pain reliever."[7]

On January 17, Dr. Blumberg wrote Rosa a prescription for pain medication to be provided from January 18 through February 16, 2019.[8] After that prescription ended, Rosa wrote to the medical unit.[9]

On March 19, Rosa met with Nurse Swaby and informed her of his pain.[10] She advised that she would "report this information" and "obtain a prescription for pain reliever" but "insisted" that Rosa "meet with [Dr.] Blumberg."[11] Rosa claims that Nurse Swaby "failed to report on record that [he] was in pain and failed to report the 3 pre-existing conditions."[12]

On March 21, Rosa again met with Nurse Swaby and requested pain medication.[13] Nurse Swaby advised that "she doesn't prescribe medication."[14] Rosa "made a verbal request for

---

[4] After the Second Circuit issued its mandate with respect to the Court's prior denial of his motion for leave to proceed *in forma pauperis*, the Court granted Rosa four extensions of time to file an amended complaint. Docs. #63, #68, #71, #74. The fourth extension came after Rosa filed an "Incomplete Amended Complaint" but requested additional time in which to file a completed amended complaint. Docs. #72, #73. The extension was granted with the caution that it would be the "final extension" and that if Rosa "does not meet this deadline, this matter will proceed to the initial review of whatever pleading is operative as of that date." Doc. #74; *see* Doc. #77 (same). Rosa failed to file a completed amended complaint by the deadline. Accordingly, I will proceed with reviewing the incomplete amended complaint, which is the operative complaint in this action. *See* Doc. #72.
[5] Doc. #72 at 2 (¶ 2), 27.
[6] *Id.* at 2 (¶ 2).
[7] *Ibid.*
[8] *Id.* at 2 (¶ 3).
[9] *Id.* at 3 (¶ 4).
[10] *Id.* at 3 (¶ 5).
[11] *Ibid.*
[12] *Id.* at 3 (¶ 6).
[13] *Id.* at 3 (¶ 7).
[14] *Id.* at 4 (¶ 7).

[Nurse Swaby] to personally get pain reliever" for him.[15] But Nurse Swaby observed that Rosa "did not look in pain" and "insisted on forwarding [his] request to [Dr.] Blumberg."[16]

On April 2, Rosa met with Dr. Blumberg and "made multiple request[s] for pain reliever."[17] He told Dr. Blumberg that he was "in extreme pain and . . . experiencing mental health issues and sleeplessness."[18] But Dr. Blumberg "refus[ed] to give [Rosa] pain medication."[19]

On April 6, Rosa contacted his mother about the denial of pain reliever and requested that she contact Commissioner Cook and Warden Doe.[20] Neither defendant returned Rosa's mother's phone calls.[21]

On April 8, Rosa submitted "multiple request[s] for medical treatment" to Warden Doe and Deputy Warden Doe.[22] But Rosa received no response.[23]

Rosa raised the denial of pain medication with Warden Doe and Deputy Warden Doe during their April tour of BCC.[24] But Rosa was told that he needed to exhaust his administrative remedies.[25]

On an unknown date in April, Rosa "was escorted to I.P.M. where they utilized [a] 4 point restraint" system.[26] Lieutenant John Doe then "retaliated against [Rosa]" by "tightening the

---

[15] *Ibid.*
[16] *Ibid.*
[17] *Id.* at 5 (¶ 9).
[18] *Ibid.*
[19] *Ibid.*
[20] *Id.* at 7 (¶ 12).
[21] *Ibid.*
[22] *Id.* at 7 (¶ 13).
[23] *Ibid.*
[24] *Id.* at 7 (¶ 14).
[25] *Ibid.*
[26] *Id.* at 8 (¶ 17). The Court understands that "I.P.M." stands for "Inpatient Medical Unit." *Rosa v. Cook*, 2022 WL 17415061, at *3 n.3 (D. Conn. 2022).

4 point restraints as tight as possible."[27] Rosa claims that this incident "was ordered by . . . possibly Dr. Tung."[28]

Rosa did not receive pain medication from February 16 through May 5 or 6, 2019.[29]

On April 5, 2021, Rosa filed this complaint.[30] At the time he filed his complaint, Rosa also filed a motion to proceed *in forma pauperis*, which this Court denied.[31] Rosa appealed the denial and the Second Circuit reversed.[32] This ruling now follows.

## Discussion

Congress by law requires that a federal court conduct an initial review of a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).[33] Still, even a *pro se* complaint may not survive dismissal if its factual allegations do not establish plausible grounds for relief. *Ibid*.

Though Rosa was released from DOC's custody after filing this complaint, review pursuant to § 1915A is proper because it applies "to claims brought by *individuals incarcerated at the time they file* their complaints." *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281,

---

[27] Doc. #72 at 8–9 (¶ 17).
[28] *Id.* at 9 (¶ 21).
[29] *Id.* at 6 (¶ 10), 8 (¶ 16).
[30] Doc. #1.
[31] Docs. #2, #9.
[32] Docs. #14, #56, #57. *See Rosa v. Doe*, 21-2628 (2d Cir. 2023).
[33] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

1282 (9th Cir. 2017) (emphasis added); *see Ruocco v. Ashraf*, 2022 WL 2064991 (D. Conn. 2022) (conducting initial review of former prisoner's complaint pursuant to § 1915A because he was incarcerated at the time of filing).

***Injunctive and declaratory relief***

Rosa is no longer incarcerated at BCC.[34] "It is settled law in this circuit that an inmate's transfer or release 'from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'" *Mitchell v. Annucci*, 2023 WL 7648625, at *2 (2d Cir. 2023) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). Accordingly, to the extent that Rosa seeks injunctive or declaratory relief, I will dismiss those claims as moot.

***Official capacity claims***

State officials who are sued in their official capacities are immune under the Eleventh Amendment from federal court lawsuits for money damages. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022). Accordingly, to the extent that Rosa seeks money damages against defendants in their official capacities, I will dismiss those claims pursuant to 28 U.S.C. § 1915A(b)(2).

***Supervisory liability***

The complaint appears to allege a theory of supervisory liability against Commissioner Cook, Warden Doe, and Deputy Warden Doe based on their lack of response to attempts to secure medical treatment for Rosa. In April 2019, Rosa's mother contacted Commissioner Cook and Warden Doe "to report [the] denial of medical treatment";[35] Rosa filed "multiple request[s] for medical treatment" with Warden Doe and Deputy Warden Doe;[36] Rosa made a "request for

---

[34] *See* Docs. #54, #93.
[35] Doc. #72 at 7 (¶ 12).
[36] *Id.* at 7 (¶ 13).

medical treatment" to Warden Doe and Deputy Warden Doe during their tour of BCC;[37] and Rosa filed grievances against the three defendants relating to their inaction in providing him with pain medication.[38]

The Second Circuit has ruled, however, that "there is no special rule for supervisory liability" and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). At the pleading stage, a plaintiff must plausibly allege each "defendant's personal involvement in the alleged constitutional deprivation" to establish his or her liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

Rosa has not done so here with respect to Commissioner Cook, Warden Doe, and Deputy Warden Doe. Indeed, he makes no allegations that these three defendants were involved in the withholding of pain medication. Though Rosa claims that he filed multiple requests with them and submitted grievances about the withholding of pain medication, "a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement." *Baltas v. Jones*, 2023 WL 8827880, at *16 (D. Conn. 2023). And while Rosa alleges that both he and his mother attempted to raise this issue verbally with Warden Doe and Deputy Warden Doe, "to hold [high-ranking supervisory officials] liable on a mere complaint by an inmate, even a verbal one, would raise the same problems stemming from liability from letters alone." *Oh v. Saprano*, 2020 WL 4339476, at *7 (D. Conn. 2020). Nor does it matter that Rosa spoke in person with Warden Doe and Deputy Warden Doe, because he has not alleged that he was "clearly in very serious, visible danger at the time he made the complaint," rendering his complaint "functionally equivalent to sending . . . a letter." *Ibid.*

---

[37] *Id.* at 7 (¶ 14).
[38] *Id.* at 9 (¶¶ 16, 18–20).

Accordingly, I will dismiss Rosa's supervisory liability claims against Commissioner Doe, Warden Doe, and Deputy Warden Doe pursuant to 28 U.S.C. § 1915A(b)(1).

***First Amendment retaliation***

Rosa claims Dr. Tung and Lieutenant Doe retaliated against him. Specifically, he alleges that Dr. Tung "ordered" Rosa be placed in restraints, which Lieutenant Doe "tighten[ed] . . . as tight as possible," in retaliation for grievances Rosa filed.[39] "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration," courts "are careful to require non-conclusory allegations." *Burns v. Martuscello*, 890 F.3d 77, 83–84 (2d Cir. 2018). A successful retaliation claim consists of three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Id.* at 84.

The filing of a prison grievance constitutes protected activity under the first element required to state a retaliation cause of action. *See Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Lewis v. Stango*, 2023 WL 4684666, at *5 (D. Conn. 2023). The grievances Rosa filed clearly satisfy this element.

But Rosa's retaliation claims lack the requisite causal connection between the protected activity and adverse action. The complaint provides no indication that Dr. Tung and Lieutenant Doe were aware of Rosa's previous grievances. Even assuming that they were aware of the grievances, Rosa has not provided any basis to believe that Dr. Tung and Lieutenant Doe would retaliate for grievances in which they were not personally named. *See Dixon v. Lupis*, 2021 WL

[39] *Id.* at 8–9 (¶¶ 17, 21).

4391246, at *9 (D. Conn. 2021) (collecting cases). Accordingly, I will dismiss Rosa's retaliation claims against Dr. Tung and Lieutenant Doe pursuant to 28 U.S.C. § 1915A(b)(1).

***Nurse Karamavros***

Rosa appears to allege a deliberate indifference claim against Nurse Karamavros based on the two-day delay between his intake and evaluation by Dr. Blumberg.[40] Because Rosa was a pretrial detainee at the time of these alleged incidents, I will consider his claim under the Fourteenth Amendment instead of the Eighth Amendment. *See Charles v. Orange County*, 925 F.3d 73, 85 (2d Cir. 2019) (pretrial detainee deliberate indifference claims fall under the Fourteenth Amendment).

"When the basis for a prisoner's claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment," a court "examines whether the delay itself created a risk of harm." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018). "In considering whether a delay caused a risk of harm, a court may consider the absence of adverse medical effects or demonstrable physical injury." *Ibid.*

But Rosa does not "allege that he experienced any harmful effects from" this two-day delay. *Mago v. Finnucan*, 2021 WL 171040, at *4 (D. Conn. 2021); *see Valdiviezo*, 752 F. App'x at 32. Accordingly, I will dismiss Rosa's deliberate indifference claim against Nurse Karamavros pursuant to 28 U.S.C. § 1915A(b)(1).

***Nurse Swaby***

Rosa alleges that Nurse Swaby failed to include his complaints and preexisting conditions in her medical report. Specifically, he claims she "failed to report on record that [Rosa] was in pain and failed to report the 3 pre-existing conditions that [were] causing pain."[41] But because

[40] *Id.* at 2 (¶¶ 2–3).
[41] *Id.* at 3 (¶ 6).

"[i]nmates have no constitutional right to accurate prison records," incomplete entries "in an inmate's medical records do not rise to the level of a constitutional violation." *Crispin v. Peiri*, 2023 WL 2931846, at *7 (D. Conn. 2023). Accordingly, I will dismiss Rosa's incomplete medical records claim against Nurse Swaby pursuant to 28 U.S.C. § 1915A(b)(1).

Rosa also alleges that Nurse Swaby exhibited deliberate indifference to his need for pain medication.[42] But Rosa claims that Nurse Swaby "doesn't prescribe medication."[43] And Rosa "cannot fault Nurse [Swaby] for failing to rectify a condition of confinement over which she had no control." *Stevenson v. Quiros*, 2023 WL 2240287, at *7 (D. Conn. 2023) (collecting cases). Accordingly, I will dismiss Rosa's deliberate indifference claim against Nurse Swaby pursuant to 28 U.S.C. § 1915A(b)(1).

***Dr. Blumberg***

Rosa claims that Dr. Blumberg was deliberately indifferent to his serious medical needs. To prevail on his Fourteenth Amendment medical indifference claim, Rosa must allege facts showing both that his medical need was objectively serious, and that Dr. Blumberg acted with a sufficiently culpable mental state. *See Charles*, 925 F.3d at 86. To meet the seriousness requirement, a prisoner must allege that he has "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Ibid.* (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). To meet the mental state requirement, a prisoner must allege that a defendant prison official acted with an actual awareness of a substantial risk that serious harm to the inmate will result. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021).

The complaint adequately alleges that Dr. Blumberg was deliberately indifferent to Rosa's medical needs. Chronic pain qualifies as an "objectively serious" medical condition.

---

[42] *Id.* at 4 (¶ 8).
[43] *Id.* at 4 (¶ 7).

*Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003); *see Carilli v. Semple*, 2021 WL 2515799, at *22 (D. Conn. 2021) ("The denial of pain medication may rise to the level of sufficient seriousness to satisfy the objective prong of the deliberate indifference standard in some circumstances."). Here, Rosa complained about his broken collarbone and gunshot wounds when he was taken into DOC's custody and informed Dr. Blumberg that these conditions were causing him "extreme pain" and that he "was experiencing mental health issues and sleeplessness."[44]

The mental state requirement "may be established where defendants 'should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health.'" *Sherman v. Cook*, 2021 WL 311283, at *6 (D. Conn. 2021) (quoting *Charles*, 925 F.3d at 87). The complaint plausibly alleges that Dr. Blumberg should have known that failing to provide pain medication would pose a substantial risk to Rosa's health, because she had previously provided Rosa with a monthlong prescription for pain medication.[45] *See Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 508 (2d Cir. 2012) (finding that plaintiff had adequately alleged a claim of deliberate indifference to serious medical needs based, in part, on defendant's refusal to continue a prescription for pain medication).

Accordingly, I will permit Rosa's Fourteenth Amendment claim for deliberate indifference to serious medical needs to proceed against Dr. Blumberg.

***Remaining defendants***

Rosa names twelve other defendants in this action.[46] But there is nothing in the body of the complaint that identifies them as personally taking part in any of the adverse actions against

---

[44] *Id.* at 2 (¶ 2), 5 (¶ 9).
[45] *See id.* at 2 (¶ 3).
[46] *Id.* at 1. The remaining defendants are as follows: Warden Barone, Viktoria Stork, Nurse Rose, Kehinde F. Adeniji, Joseph Palomba, Nurse G. Hite, Cheryl A. Spano Lonis, Cynthia Nadeau, Gerald Valletta, Michelle Cyr, Colleen Gallagher, and Dr. Fletcher.

Rosa at BCC. In the absence of any allegations showing the personal involvement of these defendants in the violation of any of Rosa's rights, there are no grounds for Rosa's claims to proceed against them. *See Maione v. McDonald*, 2023 WL 4759251, at *4 (2d Cir. 2023) (citing *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016)). Accordingly, I will dismiss Rosa's claims against the remaining twelve defendants pursuant to 28 U.S.C. § 1915A(b)(1).

**CONCLUSION**

In accordance with the foregoing analysis, the Court enters the following orders:

1. Rosa may proceed with his Fourteenth Amendment claim for deliberate indifference to serious medical needs against Dr. Viki S. Blumberg in her individual capacity for money damages.

2. The Court otherwise DISMISSES all other claims and defendants.

3. The Clerk shall verify the current work address for Dr. Blumberg with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to that defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request by no later than the **thirty-fifth (35) day** after mailing. If Dr. Blumberg fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and Dr. Blumberg shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

4. Dr. Blumberg shall file a response to the complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to her. If Dr. Blumberg chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claim recited above. This initial review order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice to the

right of defendant to seek relief by way of a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure or other pleadings-level relief.

7. The discovery deadline is extended to **six months (180 days)** from the date of this Order. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

8. The deadline for summary judgment motions is extended to **seven months (210 days)** from the date of this Order. Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

9. If Rosa changes his address at any time during the litigation of this case, Local Court Rule 83.1(d)(1) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Rosa must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

10. The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

It is so ordered.

Dated at New Haven this 3rd day of May 2024.

/s/ ***Jeffrey Alker Meyer***______
Jeffrey Alker Meyer
United States District Judge